CITY BANK OF FORT LAUDERDALE, a Banking Corporation under the Laws of the State of Florida, and J. L. SIMMON, as Receiver of City Bank of Fort Lauderdale, a Banking Corporation under the Laws of the State of Florida, *Appellants*, vs. JASON C. HART, as Executor of the Last Will and Testament of Mary I. Roberts, deceased, *Appellee*.

136 So. 446.

530

Division A.
Opinion filed July 27, 1931.
Petition for rehearing denied September 23, 1931.

*Baxter & Walton,* for Appellants;
*Ross Williams,* for Appellee.

BUFORD, C.J.—The appellee brought suit against the appellants to enforce the payment to him of the sum of $5775.54 which he alleged was a preferred claim amongst funds going into the hands of the Receiver of City Bank of Fort Lauderdale and that the same was held in trust by the Receiver for the use of the appellee. It is alleged that the money came into the hands of the Bank by reason of the Bank following the directions of the appellee as contained in letter under date of November 13, 1925, as follows:

"November 13th, 1925.

City Bank of Fort Lauderdale,
Fort Lauderdale, Florida.

Gentlemen:

I am enclosing to you a Warranty Deed executed by the several grantors, including myself as Executor, to L. E. Rowe. You will please notify Mr. C. E. Farrington of the arrival of this Deed, who is to secure $7,500.00 for the purchase price of this land. Out of this money is to be paid all claims against the Mary I. Roberts Estate, as the same may be certified by the Probate Judge of Broward County, Florida, O.K.'d by Mr. Farrington. These bills will include a mortgage of $500.00 to Mr. Newcomb and some interest, and various other bills approved and O.K.'d as aforesaid.

You will also pay out of this purchase money $7.50 for revenue stamps to be placed on this Deed, and remit the balance to me at Watertown, Connecticut. Mr. Farrington is my agent at Fort Lauderdale and will advise you the details, not varying, however, on the instructions in this letter.

(Signed) Jason C. Hart, Executor."

That the Bank collected the $7500.00 mentioned in the letter and paid out of that fund certain sums in accordance with the directions contained in the letter and retained the balance in the sum of $5775.54 in its possession until the time the Bank closed its doors and that such fund was included in the cash on hand received by the Receiver when he took charge of the affairs of the Bank.

It is alleged that the Receiver was appointed for the Bank

on the 11th day of October, 1926; that on September 23rd, 1927 demand was made on Receiver that he turn over to appellee's attorney the balance of the fund as above stated coming into his hands as such Receiver and that on October 4th, 1927 claim was filed with the Receiver for the amount of such funds as a preferred claim. It is alleged that the Receiver deposited these funds with other funds in the State Treasury as funds of the Bank.

The Bank and the Receiver filed joint and several general demurrer and also filed a joint and several special demurrer, all of which demurrers were overruled, from which orders this appeal is taken.

The demurrers presented the question as to whether or not under the facts stated in the bill of complaint the amount of $5775.54 came into the hands of the Receiver as a special deposit and, therefore, as a trust fund, or constitute a general deposit and therefore, occupied the status of a common claim.

In Amos vs. Baird, 96 Fla. 191, 117 Sou. 789, this Court quoted with approval and adopted the former utterances of the Court in City of Miami vs. Shutts, 59 Fla. 462, 51 Sou. 929; and Collins vs. State, 33 Fla. 429, 15 Sou. 214, as follows:

"Deposits by the customers or clients of a commercial bank therewith are of two classes, viz: special or specific, and general. When the identical money or other thing deposited is to be restored or is given to the bank for some specified and particular purpose, as to pay a certain note or other indebtedness, or is received by the bank as a collecting agent, such collection to be remitted, such deposits are special or specific, and the property in the deposit remains in the depositor, the bank in such cases becomes the bailee, trustee or agent for the depositor."

It is contended by the appellant that because the funds involved in each of those cases did not come into the hands of the Bank by reason of the Bank having collected a draft drawn through it that such enunciation of the law was not

binding upon the court, but was *dicta*. The question as to whether or not a fund received by a bank as a collecting agent, the bank having collected the fund on a draft made through such bank and transmitted to such bank for collection, was not directly presented in either of those cases. The questions presented, however, were so near of kin to that question that the court deemed it expedient and not unwise to state the law applicable to such condition. If the bar has been in doubt about the rule in this regard because it considered the enunciation in those cases to be *dicta* the doubt may now be removed, as the question is here definitely presented and we follow the rule as above stated.

In the case of Myers vs. Federal Reserve Bank of Atlanta, opinion filed April 29, 1931, reported 134 Sou. 600, this Court in an exhaustive opinion prepared by Mr. Justice Davis stated the law as applicable to the funds derived from a draft drawn by one bank and transmitted to another bank for collection when such collecting bank had collected such fund and had not delivered it over to the drawing bank. In that case it was said:

> "Where funds or assets of an insolvent bank which pass to a receiver or liquidator have not been increased in amount by the addition of other assets or funds, but are greater in amount when they pass to the receiver or liquidator because there is included therein funds or assets which in contemplation of law did not belong to the insolvent bank at the time the bank closed, because previously separated in contemplation of law from the insolvent bank's funds or assets, a trust may be impressed upon the assets or funds passing to the receiver or liquidator which are thus larger in amount than would be the case had the separated funds or assets not been included in what passed to the receiver or liquidator."

Further, in the same opinion, it was said:

> "Where the cash assets of an insolvent bank passing to a receiver or liquidator are just that much larger than they would have been, but for the inclusion of

items in such cash assets to which the insolvent bank
had no title when it closed, such cash assets, whether
consisting of cash in the vaults or of accounts with
correspondent banks, or a combination of both, may be
impressed with a trust to the extent of the amounts
included therein to which the insolvent bank had no
right.''

And also:

"Trust funds must always be traced into the funds
or assets of an insolvent bank, in order that such
funds or assets, or some particular part thereof, may be
charged with a trust therefor, but such tracing may be
done in different ways.''

In that opinion the Court referred to the opinion in
the case of Bryan vs. Coconut Grove Bank & Trust Co.,
Receiver, 101 Fla. 947, 132 Sou. 481, and said:

"In that case the record showed that the check there
involved, just as the check in this case, was drawn on
another bank but was not paid because the drawer
bank failed before the check reached the drawee bank.

But, after the receiver took charge of the affairs of
the Bank of Coconut Grove, such receiver actually col-
lected the proceeds of such disputed check, and by
virtue of a stipulation such proceeds were kept by such
receiver in a separate account in another bank to abide
the decision of the court in that case. The decision of
this court merely determined that Mrs. Bryan, not the
receiver of the closed bank, was entitled to such pro-
ceeds because of the preference allowed.

So in this case the court below has merely adjudged
and decreed:

'That the petitioner is entitled to a preferred claim,
with a lien on the cash in the Palm Beach Bank &
Trust Company, and the funds on deposit in the At-
lantic National Bank in Jacksonville, as of the time
of closing of the Palm Beach Bank & Trust Company,
unless there were other equities or other claims with
reference to these same funds which ought to be con-
sidered by the Court before Petitioner should receive
payment of its claim. Thereupon it is ordered, ad-
judged and decreed that the Receiver of the Palm
Beach Bank & Trust Company show cause, if any he

has, within twenty days from this date, why a decree should not be entered requiring the payment of $85,-966.61 as a preferred claim out of the cash in the Palm Beach Bank & Trust Company as of the time of its closing and out of the fund on deposit in the Atlantic National Bank of Jacksonville, as of the time of the closing:'

Such decree is a proper one to enter in a case of this kind, because there may be other equities or other claims with reference to the same funds which ought to be considered by the court, and determined, before any particular claimant receives payment of his claim as a preference. To order a bank receiver to pay a preferred claim without some consideration given to the other possible preferred claims in the same assets or fund would be unwarranted under the law and beyond the scope of the issues involved, because determinative of rights of other potential claimants not before the court, so as to make its decree not a binding adjudication."

It appears that the order of the chancellor was without error and, therefore, should be affirmed. It is so ordered.

Affirmed.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND TERRELL, J., concur in the opinion and judgment.

DAVIS, J., disqualified.