282 So.2d 25 (1973)
The CITY OF ORLANDO, Appellant,
v.
H.L. COBLE CONSTRUCTION COMPANY, a North Carolina Corporation, et al., Appellees.
No. 71-900.
District Court of Appeal of Florida, Fourth District.
June 29, 1973.
Rehearing Denied September 17, 1973.
Robert Dyer, of Van Den Berg, Gay, Burke & Dyer, Orlando, for appellant.
Monroe E. McDonald, of Sanders, McEwan, Mims and McDonald, Orlando, for appellees.
*26 OWEN, Judge.
H.L. Coble Construction Company built a municipal incinerator under contract with the City of Orlando. When the plant failed to operate satisfactorily, the City filed a suit against the construction company (and the surety on its bond) alleging that the incinerator did not meet the performance warranty in the contract. A jury trial resulted in a verdict and judgment for both defendants, and the City has appealed.
The gravamen of the City's complaint was that the contract contained a performance warranty and that such warranty had been breached. Coble contended that the contract contained a requirement that the contractor build the plant in strict accordance with the detailed plans and specifications, and having met this requirement, it [Coble] was not responsible if the finished plant did not meet the performance requirements.
The contract, which was prepared by the City's consulting engineers and which consisted of a series of integrated contract documents numbering some 250 pages exclusive of drawings, was introduced into evidence. It did, indeed, include under the division entitled "Special Provisions" a requirement that the warranty for the incinerator would include, among other things, the following:
"12.1 That each item of equipment, and the incinerator as a whole, will perform the required function and meet the performance requirements specified herein when operating at any rate up to and including the specified capacity."
Likewise, under the division of the contract documents designated as "Technical Specifications" the equipment to be used and the details of construction were set forth with particularity. The evidence also established without serious dispute that Coble had constructed the plant in accordance with the detailed plans and specifications, and that the incinerator as constructed did not meet the above-quoted performance warranty.
At the conference on jury instructions, counsel for the City requested the court to construe the contract as containing a performance warranty on the part of Coble and to instruct the jury to that effect. The court concluded that the apparent conflict between the provision requiring the contractor to perform the work in accordance with the plans and specifications and the provision requiring that the incinerator meet the specified performance warranty created an ambiguity. It therefore declined to construe the contract as a matter of law and instead submitted the question of construction to the jury.
Appellant contends that the court erred in refusing to construe the contract and to instruct the jury as to its proper construction. We agree. The construction of a written contract is a matter of law to be determined by the court. City of Leesburg v. Hall, 1928, 96 Fla. 186, 117 So. 840; Paddock v. Bay Concrete Industries, Inc., Fla.App. 1963, 154 So.2d 313; 7 Fla.Jur., Contracts, § 73; 17A C.J.S. Contracts § 617. The court should have construed the contract as to the expressed intention of the parties.
What construction should be placed on the contract? Despite the apparent conflict between the two provisions mentioned above, it is clear from the contract documents as a whole that the intention of the parties was to require the contractor to furnish the City an incinerator which met the performance requirements. The "Special Provisions" contained a section providing as follows:
"2. Intent of Documents: The contract Documents shall have the following order of authoritative precedent:
(a) Agreement and Bond
(b) General Conditions
(c) Special Provisions

*27 (d) Technical Specifications
(e) Full size and large scale drawings
(f) Figured dimensions (drawings shall not be scaled)
(g) General drawings."
Thus, to the extent that there was a conflict between the performance warranty (as set forth in the "Special Provisions"), and the Technical Specifications, the contract expressly provided a means of resolving such conflict by going to the order of authoritative precedence. While this alone should have resolved the matter, the initial paragraph of the Technical Specifications read as follows:
"4.1 General: It is the intent of the plans and specifications to secure an incinerator plant of the specified capacity, capable of meeting all test requirements, complete and operable. All equipment, materials and appurtenances necessary to meet these requirements shall be supplied and installed."
and further on in the Technical Specifications was this cautionary provision:
"4.16.2 In case the equipment, or any part of it, fails to meet the performance requirements herein specified, reasonably implied or expected, the Contractor shall at his own expense modify, replace, or rebuild any or all defective parts or equipment until the equipment and plant does fulfill the acceptance and performance requirements."
The court should have instructed the jury that under the contract Coble was obligated to provide an incinerator meeting the performance warranty.
One part of the performance warranty set out in the "Special Provisions" was the following:
"12.4 All materials, except non-combustibles, placed in the furnace will be evaporated or incinerated to a mineral ash practically free of organic materials."
Appellees contend that since the evidence showed without dispute that the phrase "practically free of organic materials" is ambiguous, if not in fact meaningless, the trial court properly submitted to the jury the question of the interpretation of the contract. However, this ambiguity did not go to the question of whether the contract contained a performance warranty which was binding upon the contractor, but at most it simply presented a factual issue as to whether this particular part of the performance warranty reasonably had been or could be met.
Appellees also contend that the City was bound by the doctrine of an owner's implied warranty of the suitability and accuracy of its own plans, citing Bradford Builders, Inc. v. Sears, Roebuck & Co., 5 Cir.1959, 270 F.2d 649, and cases from other jurisdictions. Such doctrine is not applicable when the contractor expressly warrants against the defects alleged. Shore Drive Apartments, Inc. v. Frank J. Rooney, Inc., Fla.App. 1971, 253 So.2d 478.
Appellee-Aetna cross-assigned the denial of its motion for a directed verdict on the grounds that the bond upon which it was surety did not cover the warranty. The condition of the bond is that the contractor shall fully, promptly and faithfully "perform the contract and all obligations thereunder". The performance warranty being an obligation under the contract, the bond remains applicable to the claim alleged by the City and we find no error in this respect.
The judgment is reversed and this cause remanded for a new trial.
Reversed and remanded.
WALDEN and MAGER, JJ., concur.